## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAYDAY LOAN, LLC**<br>**d/b/a PAYDAY MONEY CENTERS,**<br>300 S. Harbor Blvd., Suite 500<br>Anaheim, CA  92805<br><br>              **Plaintiff,**<br><br>        v.<br><br>**UNITED STATES SMALL BUSINESS**<br>**ADMINISTRATION**<br>409 3rd Street, SW<br>Washington, DC  20416<br><br>and<br><br>**JOVITA CARRANZA,** *in her Official Capacity*<br>*as Administrator of the U.S. Small Business*<br>*Administration*<br>409 3rd St, S.W.<br>Washington DC 20416<br><br>and<br><br>**UNITED STATES OF AMERICA**,<br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br><br>              **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 1:20-cv-1084**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Payday Loan LLC d/b/a Payday Money Centers ("Plaintiff") brings this action for declaratory and injunctive relief, against the Small Business Administration ("SBA"), Jovita Carranza, in her official capacity as Administrator of the SBA, and the United States of America (together, "Defendants") and complains as follows:

## INTRODUCTION

1.      COVID-19 and the government measures implemented to combat its spread have affected nearly every business and employee nationwide. In response, Congress passed a series of measures intended to combat the devastating effects on both employers and employees, including the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act").

2.      The CARES Act created the Paycheck Protection Program (the "PPP" or "Program") and appropriated $349 billion for purchases of PPP loans by the Small Business Administration ("SBA"), the agency tasked with administering these loans. PPP loans, available in amounts at least equal to 2.5 times average 2019 monthly payroll costs, carry annual interest rates of only 1% and, more importantly, are subject to complete government-financed forgiveness on behalf of borrowers who incur sufficient payroll costs and/or other specified expenditures in the eight weeks following the initial disbursement of funds.

3.      Plaintiff applied for a PPP loan.

4.      Plaintiff's application was denied because the SBA's PPP rules do not permit loans to "financial businesses primarily engaged in the business of lending" and hence purport to prohibit Plaintiff from obtaining the benefits of PPP loans during this time of economic crisis.

5.      Plaintiff, a financial business engaged primarily in lending, is not immune from the financial hardships that COVID-19 has inflicted on the Nation.

6.      This unjustified stance of the SBA threatens irreparable injury to Plaintiff and its employees.

7.      The SBA rules denying Plaintiff the right to a PPP loan directly conflict with the plain language of the CARES Act, which broadly authorizes PPP loans to *any* business concern

that meets specified size requirements, was in business on February 15, 2015 and makes specified certifications regarding the COVID-19 crisis on its operations.

8.      Absent emergency injunctive relief, Plaintiff and its employees will suffer severe economic injury in these dire economic times by virtue of the SBA rules purporting to make Plaintiff ineligible for a PPP loan. This economic injury will be irreparable since lawsuits for monetary damages are not permitted against U.S. Government agencies such as the SBA.

9.      The balance of equities and public interest tilt heavily in favor of the requested relief.

10.     Accordingly, Plaintiff is entitled to a temporary restraining order and injunctive relief requiring the SBA to set aside PPP funds for the amount of the loan wrongfully denied to Plaintiff.  Plaintiff is also entitled to a temporary restraining order and injunctive relief enjoining the SBA from excluding Plaintiff and other similarly situated businesses from obtaining PPP loans under the CARES Act, and a declaration that the SBA's arbitrary exclusion of Plaintiff from the PPP Program is illegal and inconsistent with the Congressional mandate set forth in the CARES Act.

## PARTIES

11.     Plaintiff is a limited liability company organized under the laws of Delaware. Plaintiff is a financial services company that engages in lending, check-cashing, sale of money orders, money transmission and other consumer financial services.  Plaintiff operates 22 stores in California.

12.     At all times from January 1, 2019, Plaintiff has employed between 82 and 88 employees. Plaintiff provides employees several benefits such as medical and dental coverage, 401k retirement savings ability, sick and vacation leave and free life insurance. Most of Plaintiff's employees are women, including single mothers, and most are minorities.

13.     Both in 2019 and the first quarter of 2020, the Company generated approximately 67% of its revenue from its consumer lending operations, with remaining revenue from check-cashing, sale of money orders, money transmission and other consumer financial services.

14.     Defendant SBA is tasked with assisting and protecting the interests of small businesses by providing financial, contractual, and business development assistance, particularly when small businesses are victims of a disaster. 13 C.F.R. § 101.100. The SBA is located at 409 3rd St, S.W. Washington DC 20416. SBA is headed by an Administrator who is appointed by the President of the United States and confirmed by the United States Senate. 13 C.F.R. § 101.101(a).

15.     Defendant Jovita Carranza is the Administrator of the SBA. Ms. Carranza exercises "direction, authority, and control over SBA." Ms. Carranza both determines and approves all of SBA's programs to provide aid and assistance to small businesses in the United States. 13 C.F.R. § 101.101(a)(1-2).

16.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

## JURISDICTION

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents a federal question. Defendants' action prohibiting "financial businesses primarily engaged in the business of lending" from receiving loans that the SBA oversees, conflicts with the clear Congressional mandate set forth in the CARES Act.

18.     This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

19.     Authority for judicial review of agency action is further provided by 5 U.S.C. §

702, which states:

> A person suffering legal wrong because of agency action, or adversely
> affected or aggrieved by agency action within the meaning of a relevant
> statute, is entitled to judicial review thereof. An action in a court of the
> United States seeking relief other than money damages and stating a claim
> that an agency or an officer or employee thereof acted or failed to act in an
> official capacity or under color of legal authority shall not be dismissed nor
> relief therein be denied on the ground that it is against the United States or
> that the United States is an indispensable party. The United States may be
> named as a defendant in any such action, and a judgment or decree may be
> entered against the United States: *Provided*, That any mandatory or
> injunctive decree shall specify the Federal officer or officers (by name or
> by title), and their successors in office, personally responsible for
> compliance. Nothing herein (1) affects other limitations on judicial review
> or the power or duty of the court to dismiss any action or deny relief on any
> other appropriate legal or equitable ground; or (2) confers authority to grant
> relief if any other statute that grants consent to suit expressly or impliedly
> forbids the relief which is sought.

20.     5 U.S.C. § 703 provides that "If no special statutory review proceeding is

applicable, the action for judicial review may be brought against the United States, the agency by

its official title, or the appropriate officer."

21.     The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules

of Civil Procedure as well as 28 U.S.C. § 2201, the latter of which provides that: ". . . any court of

the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought. . . ."

22.     The jurisdiction of the Court to grant injunctive relief is conferred upon this Court

by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which

provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted,

after reasonable notice and hearing, against any adverse party whose rights have been determined

by such judgment."

23.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) because the SBA has its headquarters in the District of Columbia. *See* 13 C.F.R. § 101.102 (establishing SBA's headquarters in Washington, D.C.).

## FACTUAL ALLEGATIONS

### A.  The CARES Act

24.     On March 27, 2020, to attempt to mitigate the financial crisis caused by the COVID-19 pandemic, President Trump and Congress collaborated to enact the CARES Act.

25.     Sections 1102 and 1106 of the CARES Act establish the Paycheck Protection Program (the "PPP" or "Program").

26.     Loan recipients can use loans through the PPP to help pay the following costs:

   a.      Payroll costs;

   b.      costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

   c.      employee salaries, commissions, or similar compensations;

   d.      payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

   e.      rent (including rent under a lease agreement);

   f.      utilities; and

   g.      interest on any other debt obligations that were incurred before February 15, 2020.

15 U.S.C. § 636(a)(2)(F)(i), adopted by CARES Act, §1102.

27.     As recognized by the SBA, the purpose of the Program is "to provide immediate assistance to individuals, families, and businesses affected by the COVID-19 emergency." SBA Interim Final Rule, RIN 3245-AH34, Business Loan Program Temporary Changes; Paycheck

Protection Program, 85 F.R. 20811 (April 15, 2020), attached here to as Exhibit A to the Complaint (the "First Interim Final Rule").

28.    Congress' intent "is that SBA provide relief to America's small businesses expeditiously." *Id.* at 5.

29.    Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) ("Section 7(a)"), by providing 100% SBA guarantees of PPP loans (15 U.S.C. § 636(a)(2)(F)) and adding a new subsection (36) ("Subsection (36)"), authorizing PPP loans to companies previously entitled to loans under Section 7(a) and to an expanded group of for-profit businesses, Section 501(c)(3) nonprofit organizations, self-employed individuals, independent contractors and others.

30.    Specifically, Subsection (36)(D)(i) of the CARES Act provides:

(i) IN GENERAL.—During the covered period, in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) *shall be eligible to receive a covered loan if the business concern*, nonprofit organization, veterans organization, or Tribal business concern *employs not more than* the greater of—

(I) *500 employees*; or

\* \* \*

15 U.S.C. § 636(a)(36)(D)(i) (emphasis added).

31.    Additionally, a PPP loan applicant must have been in business, paying employees and/or independent contractors, on February 15, 2020, and must make specified certifications concerning, among other things, its need for funds to support ongoing operations in light of the uncertainty of current economic conditions and the use of funds to retain workers and maintain payroll or make mortgage payments, lease payment and utility payments. 15 U.S.C. §§ 636(a)(36)(F)(ii), (G).

32.     Subsection (36)(E) provides for a maximum loan amount that is normally equal to the lesser of $10 million or 2.5 times the recipient's average monthly payroll costs for the twelve months preceding the loan or calendar year 2019. *See* 15 U.S.C. § 636(a)(36)(F); First Interim Final Rule at 8-11.

33.     Subsection (36)(F) and the First Interim Final Rule specify the allowable uses of PPP loans—primarily payroll and related costs and secondarily mortgage interest, rent, utilities and interest on debt obligations incurred prior to February 15, 2020. *See* 12 U.S.C. § 636(a)(36)(F); First Interim Final Rule at , 85 F.R. at 20814.  PPP loan proceeds may not be used to fund Plaintiff's loans.

34.     Section 1106 of the CARES Act provides for government-financed forgiveness of PPP loans to the extent the proceeds are used within the eight-week period following loan origination for payroll costs and/or, to a limited extent, specified other purposes. However, in keeping with the goal of the CARES Act to promote employment, loan forgiveness is subject to formulaic reductions for companies that have laid off employees or cut compensation of individual employees more than 25%. *See, also,* First Interim Final Rule, 85 F.R. at 20814.

35.     Section 1107(a)(1) of the CARES Act appropriated $349 billion for the cost of PPP loans and the associated SBA guarantees. The processing of PPP loan applications commenced on April 3, 2020 and was conducted on a first-come, first-served basis. By April 15, 2020, the entire appropriation was fully utilized.

36.     However, on April 24, 2020, the President signed an additional COVID-19 assistance bill that increased PPP funding by an additional $320 billion. As with the first round of funding, loans will be made on a first-come, first-served basis.

37.     Subsequently, the SBA has announced that it will resume accepting applications for PPP loans **on Monday, April 27, 2020 at 10:30 am ET**.

**B.   The SBA's Administration of the PPP Loan Program**

38.     The SBA has implemented Sections 1102 and 1106 of the CARES Act through four Interim Final Rules, attached hereto as Exhibits A–D.

39.     Despite the plain Congressional command that "any business concern" meeting applicable size requirements "shall be eligible" for a PPP loan, the SBA has determined that, among other ineligible borrowers, "financial businesses primarily engaged in the business of lending" are categorically ineligible for PPP loans.

40.     Thus, the First Interim Final Rule answers the borrower question "*How do I determine if I am ineligible?*" by stating: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 …." Exh. A at 85 F.R. at 20812.  The SBA has provided no explanation or justification for this position.

41.     In turn, 13 C.F.R. § 120.110 ("Section 120.110") declares ineligible for SBA business loans in subsection (b) "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors …."

42.     The SBA has failed even to attempt an explanation why PPP loans should be subject to the same pre-existing business restrictions as other kinds of loans under Section 7(a). Nor did the SBA try to explain how its position could be harmonized with the plain language of the CARES Act.

43.     Moreover, despite choosing to apply Section 120.110(b) to PPP loans, the SBA has nevertheless concluded that some of the prohibitions in Section 120.110 are not applicable to PPP loans.

44.     First, SBA Second Interim Final Rule, RIN 3245-AH35, Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 20817 (Apr. 15, 2020), attached hereto as Exhibit B, provides that the prohibition in Section 120.110(k) for loans to businesses "principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs" cannot be harmonized with the Religious Freedom Restoration Act (P.L. 103-141). Therefore, such entities are eligible for PPP loans, despite remaining ineligible for other SBA loan programs.

45.     Second, the SBA Third Interim Final Rule, RIN 3245–AH36, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 21747 (Apr. 20, 2020), attached hereto as Exhibit C, relaxed the eligibility requirements of Section 120.110(g) with respect to lawful gaming establishments—again without explanation. As a result, previously ineligible gaming establishments will qualify for PPP loans if legal gaming revenues (net of payouts) amounted to $1 million or less of 2019 revenues and less than 50% of 2019 revenues. *Id.* at 15. Such entities remain ineligible for other SBA loans.

46.     Finally, SBA Interim Final Rule, RIN 3245-AH37, Business Loan Program Temporary Changes; Paycheck Protection Program–Requirements–Promissory Notes, Authorizations, Affiliation, and Eligibility, attached hereto as Exhibit D (the "Fourth Interim Final Rule"), overrides as to PPP loans to government owned hospitals Section 120-110(j), which otherwise precludes loans to government-owned entities.

47.     While affording limited relief to these legal gaming, religious businesses and government owned hospitals, the SBA does nothing for lending companies and does not explain why.

48.     As to Section 7(a) loans to financial institutions primarily engaged in the business of lending, the closest the SBA has come to an articulation of the reasoning behind its prohibition comes from a predecessor regulation to Section 120.110(b). That regulation listed as businesses ineligible for SBA financial assistance "[c]oncerns primarily engaged in the business of lending or investing." The regulation went on to provide: "Applicants that are otherwise eligible become ineligible where the purpose of the Financial Assistance is to finance investments that are neither related nor essential to the enterprise …." 13 C.F.R. § 120.101-2(e) (repealed), 1997 Code of Federal Regulations Archive, attached as Exhibit E.

49.     Apparently, the SBA felt that lending it supported should not be used to indirectly finance loans by third parties. Other federal instrumentalities (*e.g.,* the Federal Reserve System and Federal Home Loan Banks) serve that role. Of course, this rationale has nothing to do with whether small lending institutions are proper recipients of government support in the form of PPP loans. The proceeds of PPP loans are must be spent for payroll and a limited universe of additional operating costs—not loan funding.

C.    **Plaintiff's PPP Loan Application is Improperly Denied as a Result of the SBA's Flawed Interpretation of the CARES Act.**

50.     As a result of the aggressive shut down and quarantine measures ordered by California and local governments to mitigate the COVID-19 crisis, Plaintiff's operations have been severely and negatively impacted.

51.     The COVID-19 pandemic and the resulting government actions and societal changes have had a devastating effect on Plaintiff's business. Like many small businesses, revenue has dropped significantly, demand for Plaintiff's loans has plummeted and the percentage of the Plaintiff's historic customer base qualifying for loans has likewise plunged.

52.     In substantial part based on the hope and expectation that Plaintiff could receive a PPP loan, Plaintiff has largely resisted employee layoffs, furloughs and compensation reductions to date. However, Plaintiff has recently been forced to close one of its retail locations, resulting in the layoff of several store employees, and has had to lay off two employees in its administrative office.

53.     On April 3, 2020, the day it first became possible to apply for PPP loans, Plaintiff submitted an application for a PPP loan in the amount of $644,382 to Republic Bank of Chicago ("Republic Bank").  *See* Exhibit A to the Declaration of John Blake-Zuniga, filed concurrently herewith.

54.     On April 4, 2020, Republic Bank advised Plaintiff that it must deny its PPP Application because, under rules that the SBA says apply to the Program, companies primarily engaged in the business of lending are ineligible for PPP loans. Republic Bank further advised that, but for this prohibition, Plaintiff would have qualified for the loan requested in its Application.

55.     In light of the COVID-19 crisis and the denial of its PPP Application, Plaintiff is currently unable to break even much less make a profit. Plaintiff estimates that it lost approximately $63,000 in March pre-tax and projects that, barring major changes, it will lose approximately $90,000 pre-tax in April and over approximately $100,000 pre-tax in May.

56.     Solely because of the SBA's decision to misapply Section 120.110 to PPP loans, Plaintiff is unable to obtain a PPP loan. Absent immediate relief in the form of the requested TRO, Plaintiff will lose the opportunity to obtain a PPP loan and the loan forgiveness it could claim, a loss exceeding $634,000. Without a PPP loan, Plaintiff will need to shut down most of its stores and likely its entire business.

57.     The harm caused to Plaintiff and its employees cannot be remedied because the SBA cannot be sued for damages.

## CLAIM I
### *The Invalidity of the SBA's Regulation and SOP*

58.     Plaintiff incorporates by reference paragraphs 1-57 as if fully restated herein.

59.     Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including this Plaintiff, the SBA lacked authority to promulgate regulations which restricted the businesses eligible for PPP Loans.

60.     As a direct and proximate result of its improper and invalid application of Section 120.119(b) against Plaintiff, Plaintiff has suffered and will continue to suffer irreparable injuries including, but not limited to, a loss of a forgivable loan exceeding $644,000, the need to close at least 70% of its stores and the likelihood of having to close its entire business. Plaintiffs' employees and landlords will also suffer irreparable injury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff hereby respectfully ask this Court to:

A.      Issue a Temporary Restraining Order and Preliminary Injunction requiring the SBA to set aside $644,382 of the newly appropriated PPP funds (so the SBA can and will guarantee any PPP loan to Plaintiff up to this amount).

B.      Issue a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction enjoining the SBA, as well as its employees, agents and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(b) in regard to loan applications made pursuant to the Payroll Protection Program of the

CARES Act (so a lender can disregard Section 120.110(b) in processing a PPP loan application from Plaintiff);

      C.      Issue an order declaring unlawful the SBA's application of 13 C.F.R. § 120.110(b) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act to exclude "financial businesses primarily engaged in the business of lending" from eligibility for such loans;

      D.      Award Plaintiff its reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d); and

      E.      Award all other relief that this Court deems just and necessary.

April 25, 2020                          Respectfully submitted,

                                        */s/ Christopher Hatfield*_____
                                        Christopher Hatfield (Bar No. 1024182)
                                        Constantinos G. Panagopoulos (Bar No. 430932)
                                        Daniel J Tobin (Bar No. 434058)
                                        BALLARD SPAHR LLP
                                        1909 K Street, NW, 12th Floor
                                        Washington, DC 20006
                                        Telephone: 202.661.2200
                                        Facsimile: 202.661.2299
                                        hatfieldc@ballardspahr.com
                                        cgp@ballardspahr.com
                                        tobindj@ballardspahr.com

                                        Jeremy T Rosenblum
                                        (motion for admission *pro hac vice* forthcoming)
                                        BALLARD SPAHR LLP
                                        1735 Market Street, 51st Floor
                                        Philadelphia, PA 19103
                                        Telephone: 215.665.8500
                                        Facsimile: 215.864.8999
                                        rosenblumjt@ballardspahr.com

                                        Sarah T. Reise
                                        (motion for admission *pro hac vice* forthcoming)
                                        BALLARD SPAHR LLP
                                        999 Peachtree Street, Suite 1000
                                        Atlanta, GA 30309-3915
                                        Telephone: 678.420.9300
                                        Facsimile: 678.420.9301
                                        reises@ballardspahr.com

                                        *Attorneys for Plaintiff*

## **VERIFICATION OF PLAINTIFF**
## **(Pursuant to 28 U.S.C. § 1746)**

I, John Blake Zuniga, verify under the penalties of perjury under the laws of the United States of America that the foregoing factual allegations relating to the Payday Loan, LLC within my personal knowledge and are to the best of my knowledge true, complete, and correct.


Executed on April 24, 2020


John Blake Zuniga
Founder/Controlling Shareholder
Payday Loan, LLC

## CERTIFICATE OF SERVICE

I, Constantinos G. Panagopoulos, hereby certify that on April 25, 2020, the foregoing has been filed via the CM/ECF system and by email to Emergency_Judge@dcd.uscourts.gov. This filing was also sent via electronic mail on April 25, 2020 and will be sent by First Class Certified Mail on April 27, 2020 to the Counsel for the Defendants listed below:

Chris Pilkerton
Eric Benderson
Office of General Counsel
U.S. Small Business Administration
409 3rd St, S.W.
Washington DC 20416
eric.benderson@sba.gov

David Morrell
Deputy Assistant Attorney General
Federal Programs Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530
David.M.Morrell@usdoj.gov

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel: 202-514-3358
James.Gilligan@usdoj.gov

and will be sent by First Class Certified Mail on April 27, 2020 to:

Timothy J. Shea
United States Attorney
District of Columbia
555 4th St NW,
Washington, DC 20530
202-252-7566

*/s/ Christopher Hatfield*
Christopher Hatfield