## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAYDAY LOAN, LLC<br>d/b/a PAYDAY MONEY CENTERS<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION, JOVITA CARRANZA, *in<br>her Official Capacity as Administrator of the U.S.<br>Small Business Administration*, and the UNITED<br>STATES OF AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 1:20-cv-1084 |

### PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION[1]

Pursuant to Fed. R. Civ. P. 65 and LCvR 65.1, Plaintiff Payday Loan, LLC d/b/a Payday

Money Centers moves for an emergency Temporary Restraining Order and Preliminary Injunction

against Defendants United States Small Business Administration ("SBA"), Jovita Carranza, in her

official capacity as Administrator of the SBA, and the United States of America (collectively,

"Defendants"): (1) to enjoin them from enforcing 13 C.F.R. § 120.110(b) ("Section 120.110(b)")

to deprive Plaintiff of the right to apply for and obtain loans under the Paycheck Protection

Program (the "PPP" or "Program"), established by the Coronavirus Aid, Relief, and Economic

Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act"); and (2) to preserve

the status quo pending the Court's decision on the validity of Section 120.110(b) by requiring

Defendants to set aside $644,382 (or $310 ***billion*** of additional funding appropriated on April 24,

---

[1] ECF procedures indicate that a motion for a TRO should be filed in person. Due to Covid19 issues, we are E-Filing, emailing a copy to the emergency judge, and will follow up with the court when it opens on Monday morning.

2020) for the PPP loan Plaintiff has requested in the event this Court ultimately rules that Section 120.110(b) is invalid as to PPP loans.

Under the CARES Act, small businesses may obtain PPP loans up to at least 2.5 average monthly payroll costs in 2019 and in many cases obtain full government-paid forgiveness of the loan, which effectively converts the loans into government grants. $349 billion was initially appropriated to fund the Program. Due to the overwhelming popularity of the Program, this appropriation was fully utilized in less than two weeks. As a result, Congress passed and the President signed on April 24, 2020 an additional $310 billion of PPP funding, H.R. 266, and the SBA announced it will begin accepting applications for the second tranche of funding on Monday, April 27, 2020, at 10:30 am ET.  Because funding is provided on a "first-come, first served" basis and there is no assurance that the second round of funding will suffice beyond a few hours or days, absent emergency relief, Plaintiff is threatened by a permanent loss of its right to a PPP loan and government forgiveness of the loan.

This motion is made on the grounds specified herein and in Plaintiff's brief in support thereof, the Verified Complaint, the Declaration of John Blake-Zuniga, and such other and further evidence as may be presented to the Court at the time of the hearing.

Pursuant to Local Rule 7(m), Plaintiff has conferred with Counsel for the SBA who stated that he does not have authority to approve this motion in whole or in part.

WHEREFORE, Plaintiff respectfully requests that the Court either grant the foregoing Motion or schedule a hearing on Plaintiff's Motion on Monday morning, April 27, 2020 before 10:30 am ET, enter the proposed Temporary Restraining Order and Preliminary Injunction, and enter such other and further relief as it deems just and appropriate.

Respectfully submitted this the 25th day of April, 2020.

Respectfully submitted,

*/s/ Christopher Hatfield*
Christopher Hatfield (Bar No. 1024182)
Constantinos G. Panagopoulos (Bar No. 430932)
Daniel J Tobin (Bar No. 434058)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: 202.661.2200
Facsimile: 202.661.2299
hatfieldc@ballardspahr.com
cgp@ballardspahr.com
tobindj@ballardspahr.com

Jeremy T Rosenblum
(motion for admission *pro hac vice* forthcoming)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999
rosenblumjt@ballardspahr.com

Sarah T. Reise
(motion for admission *pro hac vice* forthcoming)
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
Telephone: 678.420.9300
Facsimile: 678.420.9301
reises@ballardspahr.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PAYDAY LOAN, LLC** | ) |
| **d/b/a PAYDAY MONEY CENTERS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIVIL ACTION NO. 1:20-cv-1084** |
| **v.** | ) |
| | ) |
| **UNITED STATES SMALL BUSINESS** | ) |
| **ADMINISTRATION, JOVITA CARRANZA,** *in* | ) |
| *her Official Capacity as Administrator of the U.S.* | ) |
| *Small Business Administration***, and the UNITED** | ) |
| **STATES OF AMERICA,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

COVID-19 and the government measures implemented to combat its spread have affected nearly every business and employee nationwide. In response, Congress passed a series of measures intended to combat the devastating effects on both employers and employees, including the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act") and a successor bill signed on April 24, 2020 ("CARES II"). The CARES Act created the Paycheck Protection Program (the "PPP" or "Program") and appropriated $349 billion for purchases of PPP loans by the Small Business Administration ("SBA"), the agency tasked with administering these loans. PPP loans, available in amounts at least equal to 2.5 times average 2019 monthly payroll costs, carry annual interest rates of only 1% and, more importantly, are subject to complete government-financed forgiveness on behalf of borrowers who incur sufficient payroll costs and/or other specified expenditures in the eight weeks following the initial disbursement of funds. Among other things, CARES II appropriated an additional $310 billion for the Program.

Plaintiff has applied for a PPP loan in the amount of $654,382 (which, if approved, is subject to a $10,000 reduction on account of a $10,000 non-refundable "advance" received by Plaintiff on an Economic Injury Disaster Loan). However, the SBA's PPP rules do not permit loans to "financial businesses primarily engaged in the business of lending" and hence purport to prohibit Plaintiff from obtaining the benefits of a PPP loan during this time of economic crisis. Plaintiff, a financial business engaged primarily in lending, has been severely impacted by the financial hardships that COVID-19 has inflicted on the Nation. This unjustified stance of the SBA threatens irreparable injury to Plaintiff and its employees.

A TRO and preliminary injunction is warranted here because:

- Plaintiff has a powerful case on the merits (not merely the substantial argument required by applicable law). The SBA rules denying Plaintiff the right to a PPP loan directly conflict with the plain language of the CARES Act, which broadly authorizes a PPP loan to *any* business concern that meets specified size requirements, was in business on February 15, 2020 and makes specified certifications regarding the impact of the COVID-19 crisis on its operations.

- Absent emergency injunctive relief, Plaintiff and its employees will suffer severe economic injury. This economic injury will be irreparable since lawsuits for monetary damages are not permitted against U.S. Government agencies.

- The balance of equities and public interest tilt heavily in favor of the requested relief.

Accordingly, pursuant to Fed. R. Civ. P. 65 and LCvR 65.1, Plaintiff submits this memorandum in support of its Emergency Motion for a Temporary Restraining Order and

2

Preliminary Injunction against the SBA, Jovita Carranza, in her official capacity as Administrator of the SBA, and the United States of America.

## II.    BACKGROUND

Sections 1102 and 1106 of the CARES Act establish the Paycheck Protection Program (the "PPP" or "Program"). Sections 1102 and 1106 have been implemented by four Interim Final Rules, attached as Exhibits A–D to the Complaint.

As recognized by the SBA, the purpose of the Program is "to provide *immediate assistance* to individuals, families, and businesses affected by the COVID-19 emergency." SBA Interim Final Rule, RIN 3245-AH34, Business Loan Program Temporary Changes; Paycheck Protection Program, Exh. A to the Complaint (the "First Interim Final Rule") 85 F.R. 20811 (April 15, 2020) (emphasis added). Congress' intent "is that SBA provide relief to America's small businesses expeditiously." *Id.* at 5.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) ("Section 7(a)"), by providing 100% SBA guarantees of PPP loans (15 U.S.C. § 636(a)(2)(F)) and adding a new subsection (36) ("Subsection (36)"), authorizing PPP loans to companies previously entitled to loans under Section 7(a) and to an expanded group of for-profit businesses, Section 501(c)(3) nonprofit organizations, self-employed individuals, independent contractors and others.

Subsection (36)(E) provides for a maximum loan amount that is normally equal to the lesser of $10 million or 2.5 times the recipient's average monthly payroll costs for the twelve months preceding the loan or calendar year 2019. *See* 15 U.S.C. § 636(a)(36)(F); First Interim Final Rule at 8-11.

Subsection (36)(F) and the First Interim Final Rule specify the allowable uses of PPP loans—primarily payroll and related costs and secondarily mortgage interest, rent, utilities and

3

interest on debt obligations incurred prior to February 15, 2020. *See* 15 U.S.C. § 636(a)(36)(F); First Interim Final Rule at 15-17.

Section 1106 of the CARES Act provides for government-financed forgiveness of PPP loans to the extent the proceeds are used within the eight-week period following loan origination for payroll costs and/or, to a limited extent, specified other purposes. However, in keeping with the goal of the CARES Act to promote employment, loan forgiveness is subject to formulaic reductions for companies that have laid off employees or cut compensation of individual employees more than 25%. *See, also,* First Interim Final Rule at 13-14.

Section 1107(a)(1) of the CARES Act appropriated $349 billion for the cost of PPP loans and the associated SBA guarantees. The processing of PPP loan applications commenced on April 3, 2020. By April 15, 2020, the entire appropriation was fully utilized. Accordingly, Congress passed and the President signed CARES II, providing for an additional $310 billion of PPP funding. This second round of PPP lending is scheduled to commence on Monday, April 27, 2020.

Plaintiff was deprived of the right to participate in the first round of PPP financing. *See* Declaration of John Blake-Zuniga, attached hereto as Exhibit 1.  If Plaintiff is unable to obtain a loan in the second round of financing—a real possibility due to the huge demand for PPP loans and the "first-come, first-served" allocation of loan approvals, it will have lost a key tool to cope with the economic uncertainties caused by COVID-19 and the resulting government and societal responses, and to retain its workers and maintain their payrolls. In substantial part based on the hope and expectation that Plaintiff could receive a PPP loan, Plaintiff has largely resisted employee layoffs, furloughs and compensation reductions to date. However, due to governmental closures of virtually all businesses surrounding Plaintiff's retail locations, Plaintiff is now suffering serious and unsustainable losses. In the event it is unable to secure a PPP loan, it will be forced to retrench

4

and close a minimum of 70% of its business locations, terminating all related employees. Indeed, Plaintiff's majority shareholder believes that it is highly likely that Plaintiff will need to shut down completely and wind down all operations permanently without a PPP loan. Not only is this a significant injury to Plaintiff, but it is an injury to society as a whole.

## III.    ARGUMENT

### A.    Standard of Review.

A temporary restraining order or preliminary injunction is appropriate when a moving party demonstrates by verified complaint or affidavit that the movant's rights are being or will be violated by an adverse party, and the movant will suffer immediate and irreparable injury or loss. Fed. R. Civ. P. 65(b). In determining whether to grant preliminary or temporary injunctive relief, the Court must consider whether (1) the plaintiff has demonstrated a likelihood of success on the merits; (2) the plaintiff will be irreparably harmed by the denial of injunctive relief; (3) the threatened injury to the plaintiff outweighs the harm to the defendant; and (4) the issuance of an injunction would not be averse to the public. *Pursuing America's Greatness v. FEC (PAG)*, 831 F.3d 500, 505 (D.C. Cir. 2016) (quoting *Winter v. NRDC*, 555 U.S. 7, 20, 22 (2008)).Plaintiff is able to demonstrate each factor necessary for the entry of injunctive relief.

### B.    Plaintiff Has A Likelihood Of Success On The Merits.

Agency action must be set aside when it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The SBA's determination that financial businesses primarily engaged in the business of lending must be foreclosed from obtaining PPP loans directly conflicts with Section 1102 of the CARES Act, which provides that PPP loans are to be made available to "any business concern" meeting CARES Act size limitations.

This is a simple case of statutory construction. Not only does Plaintiff have a likelihood of success on the merits, it has a compelling case.

DMEAST #40784295 v8

Subsection (36)(D)(i) provides:

> (i) IN GENERAL.—During the covered period, in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) *shall be eligible to receive a covered loan if the business concern*, nonprofit organization, veterans organization, or Tribal business concern *employs not more than* the greater of—
>
> (I) *500 employees*; or
>
> \* \* \*

15 U.S.C. § 636(a)(36)(D)(i) (emphasis added).[2]

In the face of this plain Congressional command that "any business concern" meeting applicable size requirements "shall be eligible" for a PPP loan, the SBA has determined that, among other ineligible borrowers, "financial businesses primarily engaged in the business of lending" are categorically ineligible for PPP loans. Thus, the First Interim Final Rule answers the borrower question "*How do I determine if I am ineligible?*", without explanation or justification, by stating: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 …." In turn, 13 C.F.R. § 120.110(b) ("Section 120.110(b)") declares ineligible for SBA business loans "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors …."

The SBA failed even to attempt an explanation why PPP loans should be subject to the same pre-existing business restrictions as other kinds of loans under Section 7(a). Nor did the SBA try to explain how its position could be harmonized with the plain language of the CARES Act.

---

[2]     Additionally, a PPP loan applicant must have been in business, paying employees and/or independent contractors, on February 15, 2020, and must make specified certifications concerning, among other things, its need for funds to support ongoing operations in light of the uncertainty of current economic conditions and the use of funds to retain workers and maintain payroll or make mortgage payments, lease payment and utility payments. 15 U.S.C. §§ 636(a)(36)(F)(ii), (G).

DMEAST #40784295 v8

As to Section 7(a) loans to financial institutions primarily engaged in the business of lending, the closest the SBA has come to an articulation of the reasoning behind its prohibition comes from a predecessor regulation to Section 120.110(b). That regulation listed as businesses ineligible for SBA financial assistance "[c]oncerns primarily engaged in the business of lending or investing." The regulation went on to provide: "Applicants that are otherwise eligible become ineligible where the purpose of the Financial Assistance is to finance investments that are neither related nor essential to the enterprise …." 13 C.F.R. § 120.101-2(e) (repealed), 1997 Code of Federal Regulations Archive, attached as Exhibit E to the Complaint. Apparently, the SBA felt that lending it supported should not be used to indirectly finance loans by third parties. Other federal instrumentalities (*e.g.,* the Federal Reserve System and Federal Home Loan Banks) serve that role. Of course, this rationale has nothing to do with whether small lending institutions are proper recipients of government support in the form of PPP loans. The proceeds of PPP loans are must be spent for payroll and a limited universe of additional operating costs—not loan funding.

While the SBA has chosen to apply Section 120.110(b) to PPP loans, it has concluded that a number of the prohibitions in Section 120.110 is inappropriate. Thus, the SBA Interim Final Rule, RIN 3245-AH35, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20817 (Apr. 15, 2020) attached as Exhibit B to the Complaint (the "Second Interim Final Rule"), that the prohibition in Section 120.110(k) for loans to businesses "principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs" cannot be harmonized with the Religious Freedom Restoration Act (P.L. 103-141).

The SBA Interim Final Rule, RIN 3245-AH36, Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21747 (Apr. 20, 2020), attached as Exhibit C to the

7

Complaint (the "Third Interim Final Rule"), relaxed the eligibility requirements of Section 120.110(g) with respect to lawful gaming establishments—again without explanation. Under the Third Interim Final Rule, previously ineligible gaming establishments will qualify for PPP loans if legal gaming revenues (net of payouts) amounted to $1 million or less of 2019 revenues and less than 50% of 2019 revenues. *Id.* at 15.

Finally, SBA Interim Final Rule, RIN 3245-AH37, Business Loan Program Temporary Changes; Paycheck Protection Program–Requirements–Promissory Notes, Authorizations, Affiliation, and Eligibility, attached as Exhibit D to the Complaint (the "Fourth Interim Final Rule"), overrides as to PPP loans Section 120-110(j), which otherwise precludes loans to government-owned entities:

> A hospital that is otherwise eligible to receive a PPP loan as a business concern or nonprofit organization (described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code) shall not be rendered ineligible for a PPP loan due to ownership by a state or local government if the hospital receives less than 50% of its funding from state or local government sources, exclusive of Medicaid.

> The Administrator, in consultation with the Secretary, determined that this exception to the general ineligibility of government-owned entities, 13 CFR 120.110(j), is appropriate to effectuate the purposes of the CARES Act.

While they afford limited relief to other businesses, the Third and Fourth Interim Final Rules do nothing for lending companies and do not explain why.

Not only is the SBA determination generally to apply Section 120.110 to the PPP program and financial institutions unjustified on policy grounds, it violates at least two bedrock principles. *First*, it ignores the plain language of the governing statute. *Second*, it substitutes the SBA's unexplained judgment that specified businesses should be denied the benefits of PPP loans for Congress' direction that all small businesses qualify, in contravention of the separation of powers between Congress and the Executive branch. On both these points, the Supreme Court and the D.C. Circuit have been clear.

8

"The starting point for interpreting a statute is the language of the statute itself." *United States v. Jamison*, 934 F.2d 371, 373 (D.C. Cir. 1991) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108 (1980)); *Aref v. Lynch*, 833 F.3d 242, 263 (D.C. Cir. 2016). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *ArQule, Inc. v. Kappos*, 793 F.Supp.2d 214, 220 (D.C. Cir. 2011) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). And a court looks beyond the plain language of the statutory text only when there is "evidence that Congress meant something other than what it literally said . . . ." *Engine Mfrs. Ass'n. ex rel. Certain of its Members v. United States EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996).

Likewise, it is fundamental that Congress makes the laws and the Executive branch executes the laws. Thus, Article I, § 1 of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States …." And Article II, Section III instructs the President to "take Care that the Laws be faithfully executed …."

Moreover, a federal agency is a "creature of statute" and as such, it has "no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001). Therefore, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Id.* (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988)).

Because Congress makes the law, "no deference is due to agency interpretations at odds with the plain language of the statute itself." *Public Employees Ret. Sys. v. Betts*, 492 U.S. 158, 171, 109 S. Ct. 2854, 2863, 106 L. Ed. 2d 134, 151 (1989) (superseded by statute on other grounds); *see also United States v. Labonte*, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677, 137 L. Ed.

2d 1001 (1997) ("If the [agency's regulation] is at odds with [the statute's] plain language, it must give way."); *City of Mesa v. FERC*, 993 F.2d 888, 892–93 (D.C. Cir. 1993). "The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S. Ct. 681, 685-686, 88 L. Ed. 2d 691, 698 (1986). "The court remains the final authority on issues of statutory construction ... and cannot abdicate its ultimate responsibility to construe the language employed by Congress." *Fed. Election Comm'n v. Dem. Senatorial Campaign Comm.*, 454 U.S. 27, 102 S. Ct. 38, 42, 70 L. Ed. 2d 23 (1981); *Zuber v. Allen*, 396 U.S. 168, 90 S. Ct. 314, 24 L. Ed. 2d 345 (1969); *NOW, Washington D.C. Chapter v. Social Sec. Admin of Dep't of Health & Human Services*, 736 F.2d 727, 734–35 (D.C. Cir. 1984) ("While on legal inquiries, including typically those of statutory construction, courts yield agencies varying degrees of deference, it is the court, not the agency, that has the final say."); *City of Anaheim v. FERC*, 558 F.3d 521, 522 (D.C. Cir. 2009) (Kavanaugh, J.) ("But we give no deference to an agency interpretation that fails to comport with the plain statutory language. The precise words of the statutory text matter.").

*Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837 (1984), has been criticized for the deference it accords agency interpretations of statutes but even *Chevron* refuses to defer to interpretations at odds with the statutory text. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.

The CARES Act accords the SBA power to adopt regulations "to carry out" the Act. Here, of course, there is nothing in the Small Business Act or the CARES Act giving the SBA power to rewrite much less overturn Subsection (36).

10

### C.     Without Injunctive Relief, Plaintiff Will Suffer Irreparable Injury.

Plaintiff will suffer irreparable harm if injunctive relief is not granted. Irreparable harm requires the moving party to show its injury is "both certain and great", and there must be a "clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotations omitted). Here, Plaintiff's injury is both certain and great, because SBA's decision to misapply Section 120.110 to PPP loans bars Plaintiff's access to PPP loans and the loan forgiveness which comes with them. Plaintiff also has a clear and present need for equitable relief, because monetary relief is unavailable since the SBA, as a federal agency, is immune to suit for monetary damages. *See, e.g. Woerner v. United States Small Business Admin.*, 739 F. Supp. 641, 650 (D. D.C. 1990) (finding plaintiffs satisfied element of irreparable harm for injunctive relief because, *inter alia*, the government is immune from suit for damages).

Solely because of the SBA's decision to misapply Section 120.110 to PPP loans, Plaintiff is unable to obtain a PPP loan. Declaration of John Blake-Zuniga, Exh. 1, at ¶ 11.[3] Absent immediate relief in the form of the requested TRO, Plaintiff will lose the opportunity to obtain a PPP loan and the loan forgiveness it could claim, a loss exceeding $644,000. As observed above, this damage is not compensable in a lawsuit against a federal agency such as the SBA. And, in any event, the whole point of the PPP is to provide **emergency** financial assistance. Without this assistance, will need to shut down most of its stores and likely its entire business. Declaration of

---

[3]      Plaintiff has under 100 employees, together with its affiliates. It was in business on February 15, 2020 and it truthfully made the certifications required by Subsection (36)(G) due to serious impacts of the coronavirus and the steps the federal and state governments have taken to contain its spread. If it obtains a PPP loan, the proceeds will be used to retain workers who might otherwise need to be furloughed or discharged and to maintain payroll.

11

John Blake-Zuniga, Exh. 1 at ¶ 5. This will have exactly the adverse impact on employees the PPP was expressly designed to forestall.

**D.** **The Balance of the Equities and Public Interest Favor a TRO and Preliminary Injunction.**

In considering the appropriateness of injunctive relief, a court should balance the possible harm to the plaintiff from denying the requested relief against the possible harm to the defendant from granting it. *See, e.g., Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531 (1987). Here, the balance of equities tilts sharply in favor of a ruling for Plaintiff.

Of course, "[p]roper administration of the laws is in the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 705 (M.D. Pa. 2003) (*citing U.S. v. Knudson*, 959 F. Supp. 1180, 1187 (D. Neb. 1997) ("[I]t is in the public interest that the federal courts uphold federal law and assure the proper functioning of government.")); *see also Siembra Finca Carmen, LLC v. Sec'y of the Dep't of Agric. of P.R.*, Civil No. 18-1783, 2020 U.S. Dist. LEXIS 20452, *33-*34 (D. P.R. Jan. 23, 2020) ("Just as a government has no interest in enforcing an unconstitutional law, the public interest is harmed by the enforcement of laws repugnant to the United States Constitution.") (citing *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).

Additionally, "[t]here is a great public interest in guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits." *Jones v. Lansing Hous. Comm'n*, Case No. 5:03-CV-123, 2003 U.S. Dist. LEXIS 28327, *22 (W.D. Mich. Sept. 19, 2003) (recommending granting injunction to require defendant to continue to provide Section 8 housing benefits to plaintiff during pendency of suit), adopted and injunction granted at *Jones v. Lansing Hous. Comm'n*, 2003 U.S. Dist. LEXIS 28328 (W.D. Mich., Oct. 17, 2003). Accordingly, the strength of Plaintiff's case on the merits militates strongly in favor of relief on this element as well.

DMEAST #40784295 v8

Also, as discussed above, denial of a TRO or preliminary injunction would have an immediate and profound impact on Plaintiff and its employees. By contrast, the SBA will suffer no harm whatsoever if relief is granted. And in all of its PPP rulemaking and guidance, the SBA has not proffered any explanation how the public interest would be impaired by PPP loans to financial businesses primarily engaged in the business of lending.

    **E.    Pending Its Determination Whether To Grant A Temporary Restraining Order And Preliminary Injunction Barring The SBA From Denying PPP Loans To Financial Businesses Primarily Engaged In The Business Of Lending, The Court Should Require The SBA To Set Aside Sufficient PPP Funding For Plaintiff's Loan.**

On April 24, 2020, Congress and the President added $310 billion of new funding to the Program. Even more than the initial round of PPP funding, which lasted less than two weeks despite the need for the SBA and banks to create new procedures and mechanisms on the fly, the new funding could be dissipated in a matter of hours or days. *See* Kimball, Spencer, "Congress approved $370 billion more in small business loans, but the money could run out in days — again," CNBC (Apr. 25, 2020), available at https://www.cnbc.com/2020/04/25/coronavirus-ppp-small-business-loans-could-run-out-in-days.html.

Accordingly, in order to protect Plaintiff's right to a PPP loan if this Court ultimately rules in Plaintiff's favor, this Court should enter an immediate order, as contemplated by 5 U.S.C. § 705, to preserve Plaintiff's rights pending conclusion of the review proceedings by requiring the SBA temporarily to set aside $644,382 of funding for the loan Plaintiff has requested.

## IV.    CONCLUSION

Plaintiff respectfully requests that this Court enter a temporary restraining order and grant a preliminary injunction enjoining and restraining Defendants from denying PPP loans to Plaintiff and other similarly situated small business concerns that primarily engage in the business of

13

lending. Pending action on this request, Plaintiff requests that the Court preserve the status quo by ordering the SBA to set aside $644,382 of PPP funding for Plaintiff.

Respectfully submitted this 25th day of April, 2020.

Respectfully submitted,

*/s/ Christopher Hatfield*
Christopher Hatfield (Bar No. 1024182)
Constantinos G. Panagopoulos (Bar No. 430932)
Daniel J Tobin (Bar No. 434058)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: 202.661.2200
Facsimile: 202.661.2299
hatfieldc@ballardspahr.com
cgp@ballarddpahr.com
tobindj@ballardspahr.com

Jeremy T Rosenblum
(motion for admission *pro hac vice* forthcoming)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999
rosenblumjt@ballardspahr.com

Sarah T. Reise
(motion for admission *pro hac vice* forthcoming)
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
Telephone: 678.420.9300
Facsimile: 678.420.9301
reises@ballardspahr.com

*Attorneys for Plaintiff*

14

## CERTIFICATE OF SERVICE

I, Constantinos G. Panagopoulos, hereby certify that on April 25, 2020, the foregoing has been filed via the CM/ECF system and by email to Emergency_Judge@dcd.uscourts.gov. This filing was also sent via electronic mail on April 25, 2020 and First Class Certified Mail on April 27, 2020 to the Counsel for the Defendants listed below:

>Chris Pilkerton
>Eric Benderson
>Office of General Counsel
>U.S. Small Business Administration
>409 3rd St, S.W.
>Washington DC 20416
>eric.benderson@sba.gov
>
>David Morrell
>Deputy Assistant Attorney General
>Federal Programs Branch
>Civil Division
>U.S. Department of Justice
>Washington, DC 20530
>David.M.Morrell@usdoj.gov
>
>James J. Gilligan
>Special Litigation Counsel
>Civil Division, Federal Programs Branch
>U.S. Department of Justice
>P.O. Box 883
>Washington, D.C. 20044
>Tel: 202-514-3358
>James.Gilligan@usdoj.gov

and will be sent by First Class Certified Mail on April 27, 2020 to:

>Timothy J. Shea
>United States Attorney
>District of Columbia
>555 4th St NW,
>Washington, DC 20530
>202-252-7566

*/s/ Christopher Hatfield*
Christopher Hatfield